# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 23-4394-GW-SKx | Date | October 6, 2023 |
|---|---|---|---|
| Title | *Deana Lozano v. Pruvit Ventures, Inc.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**    **IN CHAMBERS - FINAL RULING ON DEFENDANT PRUVIT VENTURES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT [9]**

On October 4, 2023, the Court provided the parties with a tentative ruling on Defendant's motion to dismiss (ECF No. 18). After considering the parties' written submissions and their oral arguments at the October 5 hearing, the Court issues the attached final ruling which GRANTS-IN-PART and DENIES-IN-PART the motion to dismiss.

The Court sets a scheduling conference for October 30, 2023 at 8:30 a.m. The parties are to file a joint Rule 26(f) report by noon on October 26, 2023.

Initials of Preparer    JG

**_Deana Lozano v. Pruvit Ventures, Inc._**; Case No. 2:23-cv-04394-GW-(SKx)
Final Ruling on Motion to Dismiss Complaint

## I. **Background**[1]

On June 5, 2023, Plaintiff Deana Lozano ("Plaintiff") brought a putative class action against Pruvit Ventures, Inc. ("Defendant" or "Pruvit") alleging unfair competition and deceptive practices, unjust enrichment, and breach of express warranty claims arising from her purchase of a ketogenic dietary supplement from Defendant.[2]  *See generally* Complaint ("Compl."), Docket No. 1.  Plaintiff seeks, *inter alia*, damages, restitution, injunctive relief, and attorney's fees.  *See id*.

Plaintiff alleges that she is, and at all relevant times was, a citizen of California domiciled in Los Angeles, California.  *See id*. ¶ 1.  Defendant is a Texas corporation with its principal place of business in Texas.  *See id.* ¶ 2.  Defendant formulates, manufactures, and sells ketogenic dietary supplements in multiple flavors, including caffeinated and non-caffeinated, under the brand name "KETO//OS NAT."  *See id.* ¶ 20.

Plaintiff contends that consumers recently have become more interested in food with "clean label" attributes, such as "all-natural," "no artificial ingredients," or "no preservatives."  *See id*. ¶¶ 15-16.  Many consumers are willing to pay more for such foods.  *See id*. ¶ 16.  Plaintiff identifies as such a consumer, eats intentionally for health, and carefully reviews labels to ensure she consumes natural ingredients and avoids artificial flavors/ingredients.  *See id.* ¶ 19.

According to Plaintiff, a subset of the "KETO//OS NAT" flavors – Maui Punch, Gummy Bear, Heart Tart, Blueberry Acai, Hibiscus Lemonade, and Berry Blue (the "Products") – are advertised as containing "No Artificial Flavors."  *See id.* ¶¶ 21-23.  Further, these Products state that they include "malic acid" on the back label ingredients lists.  *See id.* ¶ 23.  Plaintiff claims that these advertisements are false because the Products contain a version of malic acid, DL malic acid, that is derived from petrochemicals and is an artificial flavor.  *See id.* ¶ 22.  While there is a naturally occurring form of malic acid, Plaintiff alleges that an independent, third-party laboratory confirmed the Products contain the synthetic DL malic acid version.  *See id.* ¶ 24.  Additionally,

---

[1] The factual assertions in this section are derived from the Plaintiff's Complaint, Docket No. 1, unless otherwise indicated.

[2] At various points in Plaintiff's pleadings, Plaintiff is referred to with both female and male pronouns.  *Compare* Compl. ¶ 19, *with* Compl. ¶ 80.  As the majority of references to Plaintiff appear to be feminine, the Court will use female gender pronouns for the purposes of this ruling.

Plaintiff claims the Products' ingredients labels are misleading because they include only the generic name "malic acid" and not its specific name "DL malic acid." *See id.* ¶ 30. Plaintiff avers that Defendant's conduct violates the Federal Food, Drug, and Cosmetic Act ("FDCA"), *see* 21 U.S.C. § 301, *et seq.*, and the California Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), *see* Cal. Health & Safety Code § 109875, *et seq.*[3], which incorporates the FDCA's food flavoring and additive regulations. *See* Compl. ¶ 43.

Plaintiff claims that she reviewed the Products' labels, including the natural flavor claims and "No Artificial Flavors" statement, prior to purchasing the Maui Punch flavor on April 4, 2023. *See id.* ¶¶ 18-19, 50. Based on the labeling, Plaintiff believed that the Products only contained natural flavorings. *See id.* ¶ 50. Plaintiff alleges she would not have bought the Products, or would only have been willing to pay a substantially lower price, if she had known the advertising was false and the Products actually contained DL malic acid. *See id.* ¶ 51.

Plaintiff seeks to certify both a nationwide class of consumers and a subclass of California-resident consumers that purchased the Products from Defendant within four years prior to the filing of the Complaint. *See id.* ¶ 55. Plaintiff brings three claims against Defendant on behalf of herself and a class consisting of nationwide purchasers: (1) violation of the Texas Deceptive Trade Practices Act ("TDTPA"), *see* Tex. Bus. & Com. Code § 17.01, *et seq.*, (2) unjust enrichment, and (3) breach of express warranty. *See* Compl. ¶¶ 80, 125-32, and 133-37. Plaintiff brings five other claims against Defendant on behalf of herself and a subclass of California resident purchasers: (1)-(3) violations of California's Unfair Competition Law ("UCL"), *see* Cal. Bus. & Prof. Code § 17200, (4) violation of California's False Advertising Law ("FAL"), *see* Cal. Bus. & Prof. Code § 17500, and (5) violation of California's Consumer Legal Remedies Act ("CLRA"), *see* Cal. Civ. Code § 1770. *See* Compl. ¶¶ 86, 94, 102, 113, and 119.

Before the Court is Defendant's motion to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Complaint ("Mot."), Docket No. 9. Plaintiff filed an opposition, *see* Opposition to Defendant's Motion to Dismiss the Class Action Complaint ("Opp."), Docket No. 11, and Defendant filed a reply in support, *see* Reply in Support of Motion to Plaintiff's Complaint ("Reply"), Docket No. 12.

---

[3] The Sherman Law is the principal California state statute regulating the preparation, handling and sale of food items. *See* 2 Witkin & Epstein, California Criminal Law 4th Ed. – Crimes Against Public Peace and Welfare § 356. Cal. Health & Safety Code § 110390 provides that "It is unlawful for any person to disseminate any false advertisement of any food, drug, device, or cosmetic. An advertisement is false if it is false or misleading in any particular."

## II. **Legal Standard**

Under Rule 12(b)(1), a defendant may challenge the court's subject matter jurisdiction over the claims asserted. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Whereas a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* A district court resolves a facial attack in the same manner it would under a Rule 12(b)(6) motion to dismiss. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

If a claim sounds in fraud or mistake, a court applies the heightened pleading standard of Federal Rule of Civil Procedure 9(b), requiring that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, a plaintiff must identify "[t]he time, place, and content of [the] alleged misrepresentation[s]," as well as the "circumstances indicating falseness" or "manner in which the representations at issue were false and misleading." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (internal quotation marks and modifications omitted). Those allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything

wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Although the circumstances of the alleged fraud must be alleged with specificity, knowledge "may be alleged generally." Fed. R. Civ. P. 9(b). Thus, allegations regarding knowledge are subject to the familiar *Iqbal/Twombly* pleading standard, rather than the heightened standard of Rule 9. *See Kowalsky v. Hewlett-Packard Co.*, No. 5:10-cv-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011).

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz*, 476 F.3d at 763; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (indicating that a court may consider a document "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion").

## III. Discussion

Defendant argues in its Motion to Dismiss that Plaintiff's Complaint must be dismissed under Rule 12(b)(1) and Rule 12 (b)(6) because: (1) Plaintiff (a California citizen) does not have standing to bring claims under other states' laws or on behalf of a nationwide class, (2) Plaintiff does not have standing to pursue injunctive relief and fails to allege her claims for equitable relief, (3) one of the theories underlying Plaintiff's claims is preempted by federal law, and (4) Plaintiff fails to adequately plead claims under the CLRA, UCL, and FAL. The Court addresses each contention in turn.

### A. Standing

#### 1. Common Law Class Claims

The parties do not dispute that Plaintiff has standing to bring her claims under California law.[4] Instead, Defendant argues that Plaintiff does not have standing to bring claims under the TDTPA (which Defendant argues does not apply extraterritorially) and her common law claims for unjust enrichment and breach of express warranty on behalf of a nationwide class.[5] *See* Mot. at 15-18. Plaintiff responds only to her TDTPA claim and asserts that the TDTPA applies to out-of-state consumers, giving her standing. *See* Opp. at 20-22.

---

[4] But even if the parties stipulated to Plaintiff's standing, the Court has an independent obligation to determine the actual existence of her Article III standing. *See McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705 n.2 (9th Cir. 2020). As discussed *infra*, the Plaintiff has sufficiently alleged the bases for her Article III standing herein.

[5] Plaintiff does not specify the governing state law under which she brings her common law claims for unjust enrichment and breach of express warranty.

The "irreducible constitutional minimum" of standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) ("Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."). In the context of class actions, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted); *see also Stevenson & Fitzgerald, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* § 10:291 (2023) ("That the action is brought as a class action does not avoid the basic requirement of standing to sue – *i.e.*, the named plaintiff must allege and show plaintiff personally has been injured . . . ."). Additionally, "at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (citing *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)).

Particularized issues in this lawsuit include whether the Plaintiff has Article III standing to bring a nationwide class action in regards to common law causes of action such as unjust enrichment and when such determination should be made. Because this Court believes that the latter issue is critical, it addresses that matter first.

Courts in this District, and across the country, have split on whether to adjudicate a named plaintiff's ability to bring class claims under states' laws (other than where the Plaintiff is a citizen or where the injury occurred) at the motion to dismiss stage as a standing issue, or whether that question should be resolved during the class certification process. As one leading treatise has observed:

> [T]he class representative may seek to litigate harms not precisely analogous to the ones she suffered but harms that were nonetheless suffered by other class members. This situation generates confusion because it can be, and has been, addressed in two distinct manners: some courts, applying the standing principle, … simply find that the class representative lacks standing to pursue the class members' claims because she did not suffer their injuries in this disjuncture situation. Other courts, having determined that the class representative has standing to pursue her own claims, move on from the standing inquiry and approach the disjuncture as an issue

of class certification, not standing; these courts may hold that the class representative cannot pursue the harms that she did not suffer because her claims are not typical of those class members' claims and/or because she cannot, therefore, adequately represent those claimants. In short, there is a "standing" and a "class certification" approach to the disjuncture problem.

1 Newberg and Rubenstein on Class Actions ("*Newberg & Rubenstein*") § 2:6 (6th ed. 2022) (footnotes omitted).

Courts (that view this issue primarily and initially as one of standing) take two approaches. First, some courts simply conclude that a named plaintiff does not have standing to bring claims under the laws of states where the plaintiff does not reside or was not injured.[6] *See Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *4 (C.D. Cal. Nov. 23, 2020) ("Understandably, a named plaintiff whose injuries have no causal relation to, or cannot be redressed by, the legal basis for a claim does not have standing to assert that claim. Thus, there is no doubt that Plaintiffs lack standing to sue under other states' laws when they have no injuries in relation to the laws of those states and could not seek redress in those states' courts.") (internal quotation marks, citations, and alterations omitted); *In re Packaged Seafood Prod. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state. This is because injury in fact is not established . . . . In the absence of a named Plaintiff who has purchased a product within the relevant state – even if there are sufficient allegations of injury under other States' or federal law – there can be no determination that an interest was harmed that was <u>legally protected under the relevant state's laws</u>.") (internal quotation marks and citations omitted).[7]

Other courts exercise their discretion to apply the standing approach to dismiss claims brought under other states' laws due to prudential concerns about case management and discovery burdens imposed on the defendant. *See Effinger v. Ancient Organics LLC*, No. 3:22-cv-03596-AMO, 2023 WL 2214168, at *6 (N.D. Cal. Feb. 24, 2023). "The Court declines to exercise its discretion to defer the standing question as a matter of case management, instead opting to require

---

[6] This approach has the (intended?) result of precluding nationwide class actions in diversity cases unless there is a named class representative for each state.

[7] The underlying rationale of these decisions appears to be somewhat presumptive and simplistic. Obviously, named plaintiffs who are not citizens of a state nor injured therein cannot bring an action for themselves under the laws of that state. However, the non-resident named plaintiffs in such a class action are not seeking to litigate their own claims under the laws of that state but rather are seeking to represent class members whose claims arise within those state laws.

Plaintiff to present a named class member who possesses individual standing to assert each state law's claims against Defendants. It would be imprudent to allow [plaintiff] to proceed with these nationwide common law claims given the expansive burden on the parties and the Court to litigate the significant breadth of claims no named plaintiff can assert." *Babaian v. Dunkin' Brands Grp., Inc.*, No. 2:17-cv-04890-VAP-MRW, 2018 WL 11445614, at *4 (C.D. Cal. Feb. 16, 2018) (internal quotation marks, citations, and alterations omitted). *See also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074-75 (N.D. Cal. 2015) (requiring plaintiffs "to present a named class member who possesses individual standing to assert each state law's claims against Defendants" as a "matter of case management" given: (1) "[t]he number of consumers from 35 other states in which state law claims are asserted is vast relative to the claims to which the named Plaintiffs have standing," (2) "reservations of subjecting the Device Manufacturers to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws," and (3) "given the breadth of the proposed class and the number of state law claims asserted on behalf of the class, there is a meaningful risk that the requirements of class certification under Rule 23 may not be met or, if they are, subclasses may have to be created which would engender delay.") (internal citations omitted).

On the other hand, courts that adopt the class certification approach decline to dismiss such claims at the motion to dismiss stage, finding the question more appropriate for consideration under Fed. R. Civ. P. 23. "[W]hether a named plaintiff can represent class members whose claims arise under the laws of different states is not a standing question that needs to be decided at the motion to dismiss stage." *Sultanis v. Champion Petfoods USA Inc.*, No. 3:21-cv-00162-EMC, 2021 WL 3373934, at *5 (N.D. Cal. Aug. 3, 2021). "It is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing. Generally, the named plaintiffs in a class action do not have individual standing for all of the claims that they raise, because one individual does not have standing to claim injury to another individual. Therefore, standing analysis cannot address whether one plaintiff should be able to bring claims on behalf of others." *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D.D.C. 2016). *See also Beau v. Kia America, Inc.*, No.: 8:22-cv-01545-FWS-(JDEx), 2023 WL 4680806, *5 (C.D. Cal. June 16, 2023).

With respect to Plaintiff's unjust enrichment and breach of express warranty claims

brought on behalf of a nationwide class, this Court agrees with the line of cases treating this question as one of class certification rather than standing. "[C]lass action practice would be clearer if the courts limited Article III inquiries to the named plaintiff's own claims and undertook representational inquiries according to the many pertinent prongs of class certification. The standing inquiry would therefore be a simple one: does the named plaintiff have a justiciable claim? If the answer were yes, there is a live controversy, and the court has Article III authority to proceed. The subsequent question of who the named plaintiff might then represent, or litigate on behalf of, is properly reserved for the commonality, typicality, and adequacy inquiries of Rule 23 . . . . Rule 23 is intricately structured precisely to assess whether those differences are significant enough to render aggregate litigation problematic." *Newberg & Rubenstein* § 2:2.

Defendant is not challenging Plaintiff's standing to bring these claims on her own. With respect to her own claims, Plaintiff has standing. Rather, Defendant is only challenging Plaintiff's standing to bring these claims "on behalf of a nationwide class." Mot. at 15. "Whether the named plaintiffs can adequately represent unnamed class members with claims under other states' laws depends on how variable the laws are. If the laws are similar enough, or if they can be grouped into a small number of categories with named plaintiffs representing each category, it may be unnecessary to have a named plaintiff from every state." *In re: McCormick & Co., Inc.*, 217 F. Supp. 3d at 144. Given the parties have not presented any type of choice of law analysis comparing the variability of California law against other states, the Court is unable to determine at this time whether Plaintiff may adequately represent the class.

Additionally, the Ninth Circuit has previously adopted "the class certification approach," finding "'any issues regarding the relationship between the class representative and the passive class members – such as dissimilarity in injuries suffered – are relevant only to class certification, not to standing.'" *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting *Newberg & Rubenstein* § 2:6). The Ninth Circuit relied upon *Newberg & Rubenstein* when adopting the class certification approach in the context of whether named plaintiffs, who were not stopped during non-saturation patrols, had standing to assert the claims of absent class members who were stopped during non-saturation patrols. *See id.* at 1264. The Ninth Circuit's rationale was based in part on the named plaintiffs' claims not implicating a significantly different set of concerns than the unnamed plaintiffs' claims. *See id.* at 1263. While the facts of this case are different than those in *Melendres*, the Court would similarly find that Plaintiff's common law claims for unjust

enrichment and breach of express warranty are unlikely to implicate significantly different sets of concerns than the unnamed plaintiffs' claims arising under other states' laws. Thus, the Court would find the adoption of the class certification approach also appropriate here. *See Barrett v. Optimum Nutrition*, No. 2:21-cv-04398-DMG-SK, 2022 WL 2035959, at *7 (C.D. Cal. Jan. 12, 2022) (denying motion to dismiss nationwide class allegations because "this question is not appropriate for the pleading stage"); *Noohi v. Kraft Heinz Co.*, No. 2:19-cv-10658-DSF-SK, 2020 WL 5554255, at *6 (C.D. Cal. July 20, 2020) ("[A]ny putative common law claims based on the laws of states other than California, Georgia, Texas, and New York are not currently before the Court and therefore it is premature to consider whether Plaintiffs have standing to bring them."); *Patterson v. RW Direct, Inc.*, No. 3:18-cv-00055-VC, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018) (denying motion to dismiss for lack of standing and choosing to address whether a named plaintiff could represent class members who suffered the same injury, but whose claims arose under the laws of different states, in connection with class certification).

### 2. The TDTPA Claim

However, Plaintiff's attempt to bring a claim under the TDTPA on behalf of a nationwide class presents a different issue. The parties did not dispute Plaintiff's ability to bring her own unjust enrichment or breach of express warranty claim under California law. For Plaintiff's TDTPA claim, Defendant argues Plaintiff is unable to properly bring the claim because Texas law does not extend extraterritorially. As such, the Court must first determine whether Plaintiff can properly bring her own TDTPA claim prior to considering whether she may bring it on behalf of a nationwide class.

To recover under the TDTPA, a plaintiff must prove three elements: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). *See* Tex. Bus. & Com. Code § 17.50. A "consumer" is defined as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services," with exceptions for consumers or corporate entities with assets of $25 million or more. Tex. Bus. & Com. Code § 17.45. The Texas legislature provided that the TDTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide

efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44.

The parties dispute whether the TDTPA may be applied extraterritorially to the case at bar where Plaintiff resides in California, was injured in California, and does not seem to have any connection to Texas. Defendant argues that the Texas Supreme Court has declared an express presumption against the extraterritoriality of Texas statutes. *See* Mot. at 17. *See also Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) ("We start with the principle that a statute will not be given extraterritorial effect by implication but only when such intent is clear."); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182, 187 (Tex. 1968) ("Unless the intention to have a statute operate beyond the limits of the state or country is clearly expressed or indicated by its language, purpose, subject matter, or history, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state or country enacting it. To the contrary, the presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it, and it is generally so construed. An extraterritorial effect is not to be given statutes by implication.") (quoting 50 Am. Jur. 510, Statutes § 487). Defendant claims nothing in the TDTPA clearly expresses an intent to apply extraterritorially, so it cannot be applied to Plaintiff through implication. *See* Reply at 12. Plaintiff responds that the TDTPA should be given a liberal construction and Texas case law and the language of the TDTPA squarely provide for application of the TDTPA extraterritorially to out-of-state consumers. *See* Opp. at 20-22. *See also Collums v. Ford Motor Co.*, 449 S.W.3d 189, 193 (Tex. App. 2014) ("We conclude that appellants did not have to establish their Texas residency in order to establish their status as [TDTPA] consumers.").

The question of whether the TDTPA applies extraterritorially appears to be unsettled under Texas law. Plaintiff cites several cases that support her proposition that the TDTPA applies to non-Texas resident consumers. In response, Defendant raises valid arguments as to why those cases should not be relied upon (*e.g.*, the court in *Collums v. Ford Motor Company* explicitly declined to consider whether the TDTPA applies extraterritorially because that argument was not raised). While further research into the question does not provide a definitive answer, the weight of authority appears to suggest that the TDTPA does not apply extraterritorially to Plaintiff in these circumstances. *See Deburro v. Apple, Inc.*, No. 1:13-cv-00784-SS, 2013 WL 5917665, at n.5 (W.D. Tex. Oct. 31, 2013) ("The [TDTPA] is directed at Texas consumers . . . Deburro, a resident of Massachusetts, does not allege he purchased his MacBook Pro in Texas, or is in any way

10

connected to the state of Texas. Deburro cannot invoke the [TDTPA] to sue for conduct which occurred outside of Texas and did not affect him as a Texas resident."); *Birdsong v. Toyota Motor Credit Corp.*, No. 2000-CI-06279, 2002 WL 32830975, at \*4 (Tex. Dist. May 15, 2002) ("The [TDTPA] does not extraterritorially apply to acts occurring outside of Texas."); *Bass v. Hendrix*, 931 F. Supp. 523, 536 (S.D. Tex. 1996) ("Thus, any alleged misrepresentations made to Bass occurred outside of Texas and it could not have been anticipated that they would have an effect on a Texas resident.  Under these circumstances, the applicability of the [TDTPA] is doubtful."); *Blake Marine Grp., LLC v. Frenkel & Co.*, 439 F. Supp. 3d 249, 254 (S.D.N.Y. 2020) ("The [TDTPA], therefore, applies to litigants who are Texas residents, located in Texas at the time of the facts giving rise to suit, or affected by activities occurring in the state."); *Thomas v. Kimpton Hotel & Rest. Grp., LLC*, No. 3:19-cv-01860-MMC, 2020 WL 3544984, at \*6-7 (N.D. Cal. June 30, 2020) (dismissing TDTPA claim brought by an Arizona plaintiff who did "not allege the conduct on which his claim is based occurred in Texas").  This is reinforced by the Texas Supreme Court's general principle against giving Texas statutes extraterritorial effect without clear and express intent.  *See Harmar Bottling Co.*, 218 S.W.3d at 682; *Marmon*, 430 S.W.2d at 187.  Thus, this Court would agree with Defendant and find that Plaintiff has not met her burden to adequately plead a claim under the TDTPA.  As Plaintiff has not sufficiently plead a claim under the TDTPA, she may not bring the claim either for herself or on behalf of a nationwide class.

In sum, the Court would deny Defendant's motion to dismiss Plaintiff's unjust enrichment and breach of express warranty claims to the extent they are brought on behalf of a nationwide class as premature at this stage of pleading.  Additionally, the Court would grant Defendant's motion to dismiss Plaintiff's claim under the TDTPA.

### B.  Equitable Relief

#### 1.  Standing to Pursue Injunctive Relief

As a threshold issue, Defendant argues that Plaintiff fails to allege any facts establishing standing to pursue injunctive relief.  *See* Mot. at 18-20.  Further, Defendant claims that even if Plaintiff could show the Products have been falsely advertised, Plaintiff is unable to show any purported threat of future injury beyond information injury, which is not sufficient to establish standing.  *See id*.

As previously stated, Article III standing requires injury-in-fact, causation, and redressability.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  "[A] plaintiff must

demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). As injunctive relief is a prospective remedy, the threat of injury must be "actual or imminent, not conjectural or hypothetical." *Id.* at 180. "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (internal quotation marks omitted). The threat of future harm may be "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70.

Plaintiff argues that she has clearly alleged facts sufficient to demonstrate future harm and standing under *Davidson*. *See* Opp. at 22-23. Plaintiff claims that without an injunction Defendant will continue to unlawfully and misleadingly advertise the Products and she will be unable to rely on the Products' advertising and labeling in the future, meaning she will not buy the Products even though she would like to. *See id.* at 23. Defendant argues that while injunctive relief may be available to consumers like Plaintiff under *Davidson*, Plaintiff has failed to sufficiently plead future harm. *See* Reply at 12-13. Defendant claims that Plaintiff is seeking an injunction that would prohibit Pruvit from labeling products with the statement "No Artificial Flavors," but not change the actual content of the Products or their ingredients list labeling. *See id.* at 13. As Plaintiff may want to purchase the Products again, with the only change being the removal of the "No Artificial Flavors" phrase, Defendant claims Plaintiff has only alleged an information injury that is not sufficient to confer standing. *See In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) (finding two plaintiffs alleged only "information injury" and "bare procedural violations" not sufficient to establish standing when they asserted they would be "interested in purchasing Coke again if its labels were accurate, regardless of whether it contained chemical preservatives or artificial flavors").

Construing the Complaint in the light most favorable to Plaintiff, the Court would find that Plaintiff has sufficiently alleged facts to establish standing to pursue injunctive relief of some sort

(*e.g.*, requiring the removal of allegedly false representations on Defendant's packaging). Defendant's claim that Plaintiff has only plead an information injury is unconvincing. Plaintiff has alleged that Defendant was able to charge a premium price for its products due to its false labeling. *See* Compl. ¶ 52. This is because many consumers are willing to pay more for products that only contain natural flavors. *See id.* ¶16. Plaintiff herself alleges that without Defendant's false advertising, she either would not have purchased the product, or would have only been willing to pay a substantially reduced price for the product. *See id.* ¶ 51. Taking these allegations as true, if Plaintiff were to succeed in her request for injunctive relief, it is reasonable to infer: (i) Defendant would remove the phrase "No Artificial Flavors" from the Products to comply with state and federal regulations, (ii) the price of the Products would drop from their current inflated number, and (iii) Plaintiff would only be willing to buy the Products at this reduced amount. Thus, Plaintiff is interested in more than just whether Defendant is "telling the truth" on its Products' labels; she is also concerned with the corresponding economic impact. *Coca-Cola Prod.*, 2021 WL 3878654 at *2. Thus, Plaintiff has asserted more than just a bare procedural violation or information injury. *See Nacarino v. Chobani, LLC*, No. 3:20-cv-07437-EMC, 2022 WL 344966, at *12 (N.D. Cal. Feb. 4, 2022) ("In contrast to the *In re Coca-Cola* plaintiffs, Plaintiff here alleges that she would purchase the Product again in the future if the Product were reformulated such that the characterizing vanilla flavor of the Product is independently derived from the vanilla plant *or* if the labelling complied with federal and state regulations. Plaintiff alleges more than a bare procedural violation and that the Court's prior finding that Plaintiff establish standing for injunctive relief still obtains.") (internal citation and quotation marks omitted).

In sum, taking all allegations as true and construing all inferences in Plaintiff's favor, the Court would find that Plaintiff has adequately alleged standing to pursue injunctive relief.

### 2.  Equitable Jurisdiction

Plaintiff seeks injunctive relief and equitable relief for its UCL, FAL, CLRA, and unjust enrichment claims. Defendant moves to dismiss Plaintiff's requests for injunctive and equitable relief as she has failed to allege an adequate remedy at law. *See* Mot. at 12-14.

"In order to entertain a request for equitable relief, a district court must have equitable jurisdiction, which can only exist under federal common law if the plaintiff has no adequate legal remedy." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022). "A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."

*Philips v. Ford Motor Co.*, No. 5:14-cv-02989-LHK, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015). Federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under the UCL and CLRA. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020). The remedies under the UCL or FAL are generally limited to injunctive relief and restitution. *See Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 915 (2016).

Defendant claims that Plaintiff has requested actual damages with respect to her CLRA, TDTPA, and breach of express warranty claims demonstrating an adequate legal remedy. *See* Mot. at 14. Plaintiff does not appear to dispute those damages provide an adequate legal remedy for past harms. Instead, Plaintiff responds that she is permitted to plead equitable relief in the alternative in case discovery reveals that an adequate remedy at law does not exist. *See* Opp. at 17-18. Defendant replies that the issue is not whether a plaintiff may plead claims in the alternative, but the fact that Plaintiff has failed to establish a valid claim for equitable relief in the first place. *See* Reply at 9.

This Court recognizes that there is currently an intra-circuit split among district courts regarding whether requests for equitable relief, plead in the alternative, should be dismissed at the pleadings stage when a plaintiff has not established equitable jurisdiction. *Compare Clevenger v. Welch Foods Inc.*, No. 8:20-cv-01859-CJC-JDE, 2022 WL 18228288, at *4 (C.D. Cal. Dec. 14, 2022) (finding plaintiffs' argument they should be permitted to plead equitable remedies in the alternative "explicitly rejected by numerous courts post-*Sonner*") (collecting cases), *with Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 976 (N.D. Cal. 2022) (following "the courts in this district that find no bar to the pursuit of alternative remedies at the pleadings stage") (collecting cases). While a close call, the Court would agree with Defendant. Following its holding in *Sonner*, the Ninth Circuit treats equitable jurisdiction as a threshold matter so that "[i]n order to entertain a request for equitable relief, a district court must have equitable jurisdiction." *Guzman*, 49 F.4th at 1313. Therefore, "[t]he issue is not whether a pleading may seek distinct forms of relief in the alternative, but rather whether a prayer for equitable relief states a claim if the pleading does not demonstrate the inadequacy of a legal remedy." *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021). *See also Rodriguez v. FCA US LLC*, No. 8:22-cv-01445-FWS-JDE, 2023 WL 3150075, at *4 (C.D. Cal. Mar. 21, 2023) ("Having considered the relevant authorities, the court reads *Guzman* and *Sonner* as confirming that Plaintiff must adequately allege the inadequacy

of a remedy at law prior to proceeding at the motion to dismiss stage."). Plaintiff fails to allege that she lacks an adequate remedy at law for any of her requests for equitable relief for past harms. Plaintiff's attempt to plead these requests in the alternative does not save them. *Drake*, 2020 WL 7040125 at *14 ("[A] party does not avoid federal equitable principles merely because the equitable claim is pled in the alternative."). Thus, the Court would dismiss Plaintiff's requests for equitable relief for past harms under her UCL, FAL, and CLRA claims and her unjust enrichment claim.[8]

With regard to Plaintiff's request for injunctive relief, as discussed above, this Court would find that Plaintiff has standing to seek injunctive relief. "Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice." *Andino v. Apple, Inc.*, No. 2:20-cv-01628-DAD-AC, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021); *see also Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) (finding that if *Sonner* applies to injunctive relief, plaintiff "has shown that monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at" and "[a]n injunction would ensure that he (and other consumers) can rely on WellPet's representations in the future"). Plaintiff has adequately alleged the threat of future harm from being unable to rely on Defendant's advertising and labeling, meaning she will not purchase the Products even if she so desires. While Plaintiff's request for damages may provide an adequate legal remedy for past harms, "[t]hat remedy is insufficient to ensure that Plaintiff and the general public may be able to rely on Defendant's representations in the future." *Olmos v. T. Marzetti Co.*, No. 2:21-cv-03159-JAK-MRW, 2022 WL 18358950, at *14 (C.D. Cal. Oct. 11, 2022). Thus, the Court would find that Plaintiff has sufficiently alleged the lack of an adequate legal remedy to establish equitable jurisdiction with respect to her requests for injunctive relief.

In sum, the Court would find that Plaintiff has failed to establish equitable jurisdiction for past harms, but has adequately alleged such equitable jurisdiction as to future harms for purposes of injunctive relief. Therefore, the Court would grant Defendant's motion to dismiss Plaintiff's requests for equitable relief under its UCL, FAL, and CLRA claims to the extent they are based

---

[8] Under California law, a common claim for unjust enrichment is not an independent cause of action, but may be treated like an equitable claim for restitution. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)).

on past harms, and Plaintiff's claim for unjust enrichment. At the hearing, the parties will address whether the dismissal shall be with or without leave to amend. With respect to Plaintiff's various requests for injunctive relief, the Court would deny Defendant's motion to dismiss.

### C. Preemption

Plaintiff alleges that the Products are unlawfully advertised and labeled under two theories: (i) the Products state they contain "No Artificial Flavors" when they in fact contain DL malic acid, an artificial flavor, and (ii) the Products' ingredients labels uses the generic name "malic acid" instead of the specific name "DL malic acid." *See* Compl. ¶¶ 22, 30. Defendant argues this second theory is preempted because federal law only requires Pruvit to list the common name "malic acid" on the Products' ingredients lists. *See* Mot. at 8-9.

Federal law contains an express preemption preventing states from directly or indirectly establishing requirements for the labeling, including nutrition labeling, of food that is not identical to federal law. *See* U.S.C. § 343-1(a). Federal regulations state ingredients "shall be listed by common or usual name." 21 C.F.R. § 101.4(a)(1). However, federal regulations also provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name." 21 C.F.R. § 101.4(b). Courts have harmonized these two provisions by reasoning "[t]he provision instructing that the name 'shall be a specific name and not a collective (generic) name' does not override the 'common or usual name' requirement but instead clarifies that ingredients must be listed separately rather than as a single generic category." *Sims v. Campbell Soup Co.*, No. 5:18-cv-00668-PSG-SP, 2018 WL 7568640, at *8 (C.D. Cal. Sept. 24, 2018) (quoting 21 C.F.R. § 101.4(a)(1) and (b)). Several courts have considered this question and the majority have adopted this rationale, finding federal regulations only require that DL malic acid be listed by its common name malic acid. *See Scheibe v. Livwell Prod.*, No. 23-cv-216-MMA-(BLM), 2023 WL 4414580, at *3 (S.D. Cal. July 7, 2023) (collecting cases). This Court would agree with the majority of courts and dismiss Plaintiff's claims based on the theory that Defendant should have listed "DL malic acid" on its ingredient list as preempted.

### D. California Consumer Protection Claims

Plaintiff alleges that Defendant's false or misleading advertising of the Products as containing "No Artificial Flavors" violates the UCL, FAL, and CLRA. Defendant contends that Plaintiff fails to adequately plead claims under the UCL, FAL, and CLRA. Defendant argues that Plaintiff has not adequately alleged that she actually relied on the phrase "No Artificial Flavors"

with particularity or that she was harmed by purchasing a product containing DL malic acid. *See* Mot. at 5-8. Plaintiff responds that she has sufficiently plead reliance and the use of artificial flavoring. *See* Opp. at 5-9.

       1. <u>Reliance</u>

       "The UCL, FAL, and CLRA have independent requirements for standing, which mandate allegations of actual reliance." *Guzman v. Polaris Indus., Inc.*, No. 8:19-cv-01543-FLA-KES, 2020 WL 2477684, at *3 (C.D. Cal. Feb. 13, 2020) (internal quotation marks omitted). A plaintiff must show that a misrepresentation was an immediate cause, though not the sole or decisive cause, of the injury-producing conduct. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020). At times, actual reliance may be inferred from the misrepresentation of a material fact. *See Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017). "Actual reliance in the context of CLRA, UCL, and FAL claims requires a plaintiff allege that she (1) was exposed to (*e.g.*, heard, read, or saw) a defendant's representation regarding a product, (2) that was false and/or misleading, (3) to which a reasonable person would attach importance (materiality), and (4) incurred economic injury as a result (*e.g.*, by purchasing the product for more money than the plaintiff would have (or not purchasing the product at all) but for the misrepresentation)." *Stewart v. Electrolux Home Prod., Inc.*, No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *5 (E.D. Cal. Apr. 13, 2018). As Plaintiff's California consumer protection claims sound in fraud, they are subject to the heightened pleading requirements under Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").

       Defendant argues that Plaintiff has not plead facts with particularity showing that she actually relied on the "No Artificial Flavors" phrase on the labels before purchasing the Maui-Punch-flavored product. *See* Mot. at 5. Defendant contends Plaintiff's general allegations that she reviewed some labels from unspecified products and that she prefers products that contain all-natural ingredients is not sufficiently particularized to establish reliance. *See id.* In response, Plaintiff claims that she has plead reliance on Defendant's misrepresentations with sufficient particularity. Plaintiff alleges that she reviewed the labels on the Products prior to her purchase, including the natural flavoring claims on the labels. *See* Opp. at 5. Further, Plaintiff avers that she reasonably understood the "No Artificial Flavors" statement to mean the Products only contained natural flavorings, and that she would not have purchased, or only would have paid a

substantially lower price, for the products if not for the false and misleading representations. *See id.*

Accepting all allegations as true and construing the Complaint in the light most favorable to Plaintiff, the Court would agree that Plaintiff has adequately plead reliance with particularity. Plaintiff alleges that she was exposed to Defendant's representation about the Products by reviewing the labels of the Products, all of which said "No Artificial Flavors," prior to her purchase. *See* Compl. ¶ 50. Plaintiff claims that representation was false or misleading given the Products contain DL malic acid. *See id.* ¶ 22. Plaintiff alleges that misrepresentation is material as she and other reasonable consumers attached importance to it as they would not have purchased the Products, or would have only paid substantially less for them, without it. *See id.* ¶ 51. Finally, as a result of relying on the misrepresentation, Plaintiff incurred an economic loss by paying more for the Products. *See id.* ¶¶ 50-54. Further, Plaintiff's pleading has adequately put Defendant on notice of the facts constituting the alleged fraud. Plaintiff has stated the who (Defendant), the what (the Products' statement "No Artificial Flavors"), the when (prior to her purchase on April 4, 2023), the where (on the front label of the Products), and the how (the Products were deceptive because they actually contain DL malic acid). Thus, the Court would find that Plaintiff has adequately alleged reliance on the "No Artificial Flavors" statement with particularity.

2. Harm

Defendant claims that Plaintiff fails to allege facts specifically claiming that the Maui Punch-flavored product she purchased actually contains DL malic acid, meaning Plaintiff has only alleged a possible or theoretical risk of harm. *See* Mot. at 6-7. Defendant does not credit Plaintiff's allegation that an independent, third-party laboratory confirmed that the Products contain DL malic acid because Plaintiff has not alleged what specific products were tested, what laboratory performed the tests, when they were tested, and by what method the tests were performed. *See id.* Plaintiff responds that her allegation that an independent laboratory confirmed the existence of DL malic acid in the Products is sufficient. *See* Opp. at 8-9.

At this stage of pleading, taking Plaintiff's allegations as true and construing all inferences in her favor, the Court would agree with Plaintiff. While Defendant raises issues with the vagueness of the defined term "Products" in the Complaint, *see* Mot. at 2, the most favorable reading of the Complaint, as clarified by Plaintiff in her Opposition, *see* Opp. at 1, is that "Products" was meant to include only the six flavors defined as Products in this Order. Plaintiff

alleges that the Products, including the Maui Punch flavor, contain DL malic acid. *See* Compl. ¶ 22. Plaintiff bolsters her allegation by claiming testing by an independent, third-party laboratory has confirmed that the malic acid contained in the Products, including the Maui Punch flavor, is actually DL malic acid. *See id*. ¶ 24. While Plaintiff did not allege that her specific Maui Punch-flavored product was tested, she does allege that the Products are all substantially similar because they are all derived from the same base formulation. *See id*. ¶ 66. At minimum, it is reasonable to infer that Plaintiff's specific Maui Punch product is substantially similar to other Maui Punch products sold by Defendant. Given Plaintiff alleges that the Maui Punch flavor was one of the products tested by the laboratory, it is reasonable to infer that her specific product contains DL malic acid. On a motion to dismiss, this level of pleading is sufficient. *See Branca v. Bai Brands, LLC*, No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) ("While Branca's assumption as to the type of malic acid contained in Defendants' Products ultimately may be incorrect, at the pleading stage, this Court does not operate as a fact-finder, but, instead, must presume all facts plead as true. Thus, the Court finds Branca has sufficiently pled the products contain d-1-malic acid.") (internal quotation marks omitted).

In sum, the Court would find that Plaintiff has sufficiently plead reliance and actual harm in relation to its CLRA, UCL, and FAL claims and thus would deny Defendant's motion to dismiss these claims.

### 3.  Preemption as to Plaintiff's UCL Unlawful Claim

The parties also raise arguments as to whether Plaintiff may assert the Sherman Law as a predicate violation under Plaintiff's UCL unlawful claim. *See* Mot. at 9-12. Defendant contends that such a claim would be impliedly preempted as the Sherman Law adopts the FDCA making the FDCA the critical violation. *See id*. Plaintiff responds that she only pleads violations of the Sherman Law and thus threads the narrow gap to avoid preemption. *See* Opp. at 11-17. Regardless, Plaintiff argues that she has alleged violations under the FAL and CLRA that may serve as the predicate violations for her UCL unlawful claim. *See id*. at 11. In the Court's tentative opinion, the Court agreed that Plaintiff has sufficiently alleged a claim under the FAL and CLRA to undergird her UCL unlawful claim and declined to reach the question of implied preemption of the Sherman Law.

At the October 5 hearing, Defendant requested the Court rule on the issue of implied preemption of the Sherman Law. Defendant claimed most of Plaintiff's remaining causes of action are fraud-based, and elimination of this unlawful regulatory-based claim would limit Pruvit's

discovery obligations.  The Court finds Defendant's argument unpersuasive.  The alleged conduct at the center of the regulatory violations – improperly labeling products as containing "No Artificial Flavors" when they contained DL malic acid – is the same conduct underlying Plaintiff's fraud-based claims.  As the conduct is the same under both theories, eliminating one would not appear to create a substantial difference in discovery.  At this time, the Court would deny without prejudice Defendant's motion to dismiss Plaintiff's UCL unlawful claim under a violation of the Sherman Law.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the Court would DENY Defendant's motion to dismiss Plaintiff's Claims 7 and 8 to the extent they are brought on behalf of a nationwide class; DENY Defendant's motion to dismiss Plaintiff's Claims 2, 3, 4, 5, and 6; DENY Defendant's motion to dismiss Plaintiff's request for injunctive relief; and DENY without prejudice Defendant's motion to dismiss Plaintiff's Claim 4 based on a violation of the Sherman Law.  The Court would GRANT Defendant's motion to dismiss Plaintiff's Claim 1; GRANT Defendant's motion to dismiss Plaintiff's request for equitable relief for past harms under Claims 2, 3, 4, 5, 6, and 7; and GRANT (pursuant to the preemption discussion) Defendant's motion to dismiss Plaintiff's claims to the extent they are based on the theory Defendant's Products' ingredients labels were misleading and unlawful.  Further, the Court would DENY Plaintiff leave to amend her preempted ingredients label theory.  To the extent that leave to amend has been granted, Plaintiff will have three weeks of the entry of this Order for the filing of an amended complaint.